VOGEL, Respondent, vs. COOPER, d/b/a RIGHTSELL AGRI-
CULTURAL CHEMICAL COMPANY, Appellant.

*April 9—-May 13, 1947.*

For the appellant there were briefs by *Whyte, Hirschboeck & Minahan,* attorneys, and *Victor M. Harding* of counsel, all of Milwaukee, and oral argument by *Mr. Harding.*

*Charles C. Erasmus* of Milwaukee, for the respondent.

WICKHEM, J. Defendant as a sole trader under the name of Rightsell Agricultural Chemical Company was engaged in the business of selling calcium carbonate used in the feeding of cattle and livestock. Plaintiff was a salesman especially expert in selling products of the sort handled by defendant. On January 2, 1942, the parties entered into a written contract to the following effect: (1) Plaintiff was to receive a commission of $9 per ton on sales made by him personally; (2) payments of commission were to become due when the purchaser of a carload of material had fully paid the invoice price; (3) plaintiff was to operate strictly on a commission basis. On the same date a supplemental contract was entered providing in substance that plaintiff is recognized as a sales supervisor on a strictly commission basis and as such is to receive a $2 over-

riding commission on sales made by salesmen under his employ and direction. The contract specified neither territory nor duration of the contract. In 1942, plaintiff with a crew of three or four salesmen worked the eastern part of Wisconsin. The practice in selling calcium was to contact the feed dealer and get his permission to solicit his customers for orders. The salesmen would then contact the farmers and sell a car or more of the product, whereupon the dealer would order on the basis of these orders and pay for same on delivery. In September, 1942, plaintiff and defendant conferred concerning the prospects of developing sales in the western part of Wisconsin. As a result of that conference they contacted a man named Wheeler. Plaintiff and Wheeler agreed between themselves that Wheeler was to receive $9 per ton commission on his personal sales and plaintiff a $2 overriding commission thereon. Salesmen under Wheeler were to receive $8 a ton with $1 override to Wheeler and $2 to plaintiff on each of their sales. Two salesmen for Wheeler's crew were hired and plaintiff spent a week breaking in the new crew and helping them close sales for a carload of calcium at Mondovi. Plaintiff then returned to supervise his crew in eastern Wisconsin thereafter giving occasional assistance to Wheeler by mail or personal conference. In December, 1942, it appeared that plaintiff's sales in eastern Wisconsin had fallen off but the reports in western Wisconsin showed good progress by the new crew. On January 2, 1943, Wheeler, plaintiff, and defendant met in Milwaukee. Defendant announced that he was promoting Wheeler to a position as supervisor in western Wisconsin and that he would thereafter receive the overriding commission on sales in western Wisconsin by his crew. The jury found that plaintiff did not assent to the termination of his right to an overriding commission on these sales but that plaintiff did not notify defendant at this meeting that he would claim overriding commissions on sales made thereafter in western Wisconsin. After this meeting plaintiff received a commission

of $2 a ton on all western Wisconsin sales made before the date of the meeting. These payments came in for some time after the meeting for the reason that commissions were not due until cars were delivered and paid for. On January 23, 1943, Vogel wrote plaintiff making inquiry about a car and stating that this was the last car from western Wisconsin that he would receive a commission on. After the meeting on January 2, 1943, plaintiff made no demands for a commission on sales by Wheeler or his crew. In September, 1943, Cooper discovered that plaintiff was selling calcium for a competitor. He thereupon discharged plaintiff and made settlement with him. In July, 1944, defendant wrote Vogel that the social-security taxes paid on his commission had been refunded and that the company was ready to remit the amount to each salesman or former salesman. He raised some question whether plaintiff had not been overpaid a commission in 1941. Plaintiff replied: "I have a record of every ton sold and every cent paid to me and my books balance." During all this time no demand was made by plaintiff, and, indeed, none was made until this action was commenced in January of 1945. This action is to recover the overriding commission from January 2, 1943, which was the day on which Wheeler was made a full supervisor, to September 1, 1943, the date of plaintiff's dismissal from defendant's service.

Plaintiff claims that in September, 1942, defendant told him that if he would break in a sales supervisor at La Crosse defendant would pay him an overriding commission on all sales made by such supervisor or any men hired by him so long as they worked in western Wisconsin. Since the complaint was solely grounded on the original written contracts this injected a new issue based on an alleged modification of these contracts in September, 1942. The court permitted evidence upon this issue and submitted to the jury the question whether in September, 1942, plaintiff and defendant agreed that plaintiff was to receive an overriding commission on sales in west-

ern Wisconsin, so long as Wheeler or the men Wheeler hired were in the employ of defendant. The jury answered this question in the affirmative.

Plaintiff's case comes down to this: (1) That the written contract was modified in September, 1942, by an oral agreement by which defendant became obligated to pay an overriding commission on sales by Wheeler and his crew as long as they worked in western Wisconsin; and (2) that plaintiff did not assent in January, 1943, to the termination of this agreement.

At the outset it will be convenient briefly to consider the evidence from which the jury found that in September, 1942, an oral agreement was entered between plaintiff and defendant to the effect that plaintiff was to receive an overriding commission on sales in western Wisconsin so long as Wheeler or the men Wheeler hired were in the employ of defendant. Plaintiff testified that in consideration for his assistance in obtaining and training a crew in western Wisconsin headed by a sort of subsupervisor plaintiff would get the override on this subsupervisor and all men hired by him for as long as that supervisor or those men worked in western Wisconsin. It is without dispute in the evidence that plaintiff was paid an overriding commission on all sales made by Wheeler and his crew until January 2, 1943, at which time defendant promoted Wheeler to full rank as a supervisor and divided the state between Wheeler and plaintiff. There is evidence to support the jury's finding that this latter arrangement was objected to by plaintiff at the meeting on January 2, 1943, although plaintiff did not assert that he would insist upon overriding commissions after that date on sales by Wheeler and his crew. At this point we might as well dispose of a contention by defendant that if such an agreement was made it was unsupported by any consideration. The contention is based upon an allegation in plaintiff's complaint that under the original supervisory contract plaintiff had the duty to train and supervise salesmen.

From this, defendant contends that plaintiff was already obligated to train Wheeler and his crew and that this constituted no consideration for a promise by defendant to pay overriding commissions on Wheeler's sales. The written contract, however, making plaintiff a supervisor is in evidence and that imposes no obligation on plaintiff to hire or train or break in new crews or subsupervisors. The contract simply appoints plaintiff a sales supervisor and allows him an overriding commission on men employed or supervised by him. The determination as to what persons shall work for plaintiff as salesmen is left to plaintiff. No reference to training was made in the contract at all, doubtless because plaintiff's only income as supervisor was from the sales made by his men and it was up to him to give them any training necessary to produce overriding commissions. Hence, plaintiff had no duty under the supervisor's contract to hire and train men, and if there was some new agreement made in consideration of his undertaking to do that we would have no difficulty in finding a consideration. It is obvious to us, however, that such modification of the original contract as was made in September, 1942, was only to the extent necessary to accommodate the contract to a slightly different situation. The original contract contemplated that plaintiff would hire his own men, run his own crew or crews, and get an overriding commission upon their sales. The situation in western Wisconsin was such as to call for a separate crew working under the direction of a salesman with supervisory powers. It was not contemplated for the present to make Wheeler a supervisor or to give him a supervisor's contract. All of the conduct, and with one exception all of the conversations of the parties, plainly indicate that Wheeler, although having direction of the crew, was to be treated as in plaintiff's employ and under his supervision. After he started to work he was not only trained but supervised by plaintiff, and it is clear that it was the training and supervision of Wheeler and his crew that entitled plaintiff to an overriding

commission. Whatever special understanding might have been had was simply for the purpose of making the contract applicable to a situation where for the first time a subsupervisor was involved. Otherwise, the original contract was to be in force and applicable. Everything that was done was consistent with this purpose and intent. Vogel negotiated with Wheeler and helped select his crew or portions of it. He made his own agreement with Wheeler as to the latter's commission as subsupervisor. He supervised both training and operations until January 2, 1943. Defendant gave Wheeler no supervisor's contract or so far as we can discover any other kind of contract. Even if he had done so the contract would not have been one of employment. If there was any employment involved Wheeler was plaintiff's employee until the meeting of January 2, 1943.

These conclusions are important because it is clear from the whole record that Wheeler and his crew simply were brought under the operation of Vogel's supervisory contract and he was entitled to an overriding commission so long as they were in his employ or under his direction. True, plaintiff claims that the promise was to pay an overriding commission as long as Wheeler and his crew worked in western Wisconsin, but in the light of the circumstances that must be construed to mean as long as they worked under his direction and were in his employ he was entitled to this commission, although his supervision was far less direct and intimate than in the case of his own sales crew. All the parties so treated the situation. When Wheeler failed to receive samples, order blanks, and the like directly from defendant, defendant's reply was that he considered Wheeler to be acting under Vogel, and when requested by Vogel to furnish these supplies to Wheeler he responded that for purposes of convenience he would accede to this and send the supplies direct, thus treating Wheeler as a supervisor in name only. It is our conclusion that the arrangement of September, 1942, was probably nothing more

than an agreed application of the supervisory contract to a new situation. But if it did amount to a modification of the agreement it was a modification only sufficient to accommodate the original contract to the requirements of a second sales crew with a subsupervisor and the conditions of the original contract limiting payment of overriding commissions to sales of those under the employ and direction of plaintiff still subsisted. To admit plaintiff's contention would mean that the obligation of defendant to pay overriding commissions on the sales of the Wheeler crew would exist indefinitely irrespective of the cancellation of the original contract between plaintiff and defendant. The evidence will not support any such conclusion. This much being established, we find nothing in the original supervisor's contract or the subsequent oral arrangement that prevented plaintiff from so contracting with either Wheeler or his crew as to take them out of the employment and supervision of plaintiff. Plaintiff was assigned no territory and the contract has no period of duration. When, in January, 1943, defendant promoted Wheeler to be a supervisor he took Wheeler out of the employ and direction of plaintiff and the same comment applies to Wheeler's crew. After that time plaintiff's right to supervise and with it his right to an overriding commission terminated. Plaintiff might object to this but it did not constitute a breach of defendant's contract with him and he had no power to stop it. Even if this were not true it is evident upon the record that in spite of his objections plaintiff assented to the arrangement by subsequent conduct clearly indicating that he did not consider himself to be entitled to an override after the meeting of January 2, 1943. Within three weeks of that meeting plaintiff wrote defendant inquiring concerning the last carload of calcium ordered prior to the January meeting and stated that this was the last carload on which he was to have a commission. He thereafter made no claim for commission and as late as 1944 in response to an inquiry as to a possible overpayment of commissions to

him claimed that his books balanced on the commission account. There was considerable correspondence between the parties between the time of the January meeting and the date when plaintiff was discharged and some of this correspondence related to Wheeler's activities. There was no intimation by plaintiff that he claimed a commission on Wheeler's work. This course of conduct over a considerable period during which Wheeler was selling and being paid overriding commissions and during which no such commissions on Wheeler's sales were being paid to plaintiff is consistent only with the conclusion that whatever plaintiff's objections to the new arrangements he did assent to them. In view of this conclusion it is unnecessary to invoke or discuss any of the aspects of equitable estoppel. We conclude that plaintiff did not show himself entitled to the overriding commission which he seeks to recover in this action.

This view of the case makes it unnecessary to consider whether the trial court properly permitted the issues to be changed as heretofore indicated. It is also considered to be unnecessary to treat at any length plaintiff's contention that his conduct in selling a competing line neither breached the commission contract nor warranted his dismissal. It is apparent that plaintiff's contract could be canceled without cause at any time.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint.